[Cite as *Cleveland v. Goodman*, 2020-Ohio-2713.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,          :

                                 Nos. 108120 and 108678

    v.                                :

JAMES RAY GOODMAN,                    :
AKA JAMES GOODMAN,

                         :

    Defendant-Appellant.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED AND
VACATED IN PART
**RELEASED AND JOURNALIZED:** April 30, 2020

---

Criminal Appeal from the Cleveland Municipal Court
Case Nos. 2018 CRB 010258, 2018 CRB 015207,
2018 CRB 002242, and 2018 CRB 022363

---

### *Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, and
Karrie D. Howard, Chief Prosecutor, and Thomas A.
Fisher, Assistant City Prosecutor, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and
David M. King, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, A.J.:

**{¶ 1}** In this consolidated appeal, defendant-appellant, James Ray Goodman, appeals from his convictions and sentence following a bench trial in the Cleveland Municipal Court. He raises the following assignments of error for review:

> 1. The trial court's bias against and animosity towards Goodman denied him due process of law in violation of U.S. Constitution Amendments V, VI, VIII, XIV; Ohio Constitution Article I, Section 5, 9, and 10.
>
> 2. The trial court erred by improperly ordering restitution and by not conducting a proper hearing pursuant to R.C. 2929.18(A)(1) in violation of United States Constitution Amendments V and XIV, and Ohio Constitution Article I, Section 10.
>
> 3. The trial court, by considering uncharged, unproven criminal conduct in sentencing Goodman deprived him of his Constitutional rights to a proper charge, a trial by an impartial jury, to have the charges against him proven beyond a reasonable doubt, to confront witnesses against him, and to otherwise present a defense in violation of U.S. Constitution Amendments V, VI, VIII, XIV; Ohio Constitution Article I, Section 10.
>
> 4. The trial court denied Goodman due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution when it convicted him of contempt of court where the evidence of contempt was insufficient as a matter of law.
>
> 5. The trial court erred in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution when it failed to ensure that Goodman was adequately represented at the time he was found in contempt.
>
> 6. The trial court erred and violated Goodman's due process rights when it failed to provide the accused the opportunity for allocution at sentencing and sentenced him to multiple consecutive terms for one act in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution and Ohio Crim.R. 32.

**{¶ 2}** After careful review of the record and relevant case law, we affirm Goodman's aggravated menacing and criminal damaging convictions. However, we vacate Goodman's convictions for indirect contempt and the trial court's order of restitution. Finally, Goodman's arguments relating to his sentence are denied as moot.

## I. Procedural and Factual History

**{¶ 3}** On June 26, 2018, Goodman was charged in Cleveland M.C. No. CRB 18 010258, with a single count of aggravating menacing, a first-degree misdemeanor offense. The complaint stemmed from allegations that Goodman made threats of serious physical harm against the victim, M.E., on June 21, 2018.

**{¶ 4}** On August 28, 2018, Goodman was charged in Cleveland M.C. No. CRB 18 015207, with a single count of criminal damaging, a second-degree misdemeanor offense. The complaint stemmed from allegations that Goodman damaged the front window of M.E.'s home.

**{¶ 5}** During the pendency of these cases, Goodman was held in jail on a separate felony case. Following several continuances, a hearing was held on October 3, 2018. However, the hearing was postponed because Goodman "refused" to speak with defense counsel about his misdemeanor case until his felony case was resolved. At a hearing held on October 15, 2018, the court was notified that Goodman declined to appear in court via video broadcast from the county jail. Goodman finally appeared before the court on October 18, 2018. The trial court advised Goodman that it was "silly" for him to ignore his misdemeanor

offenses, because his freedom was at jeopardy in this case. Ultimately, the matter proceeded to a consolidated bench trial on December 3, 2018.

{¶ 6} At trial, M.E. explained that his daughter, N.P., and Goodman were previously involved in a romantic relationship and have two children together. On June 21, 2018, Goodman came to M.E.'s house to collect money M.E. owed him. At some point during this visit, Goodman threatened to burn M.E.'s house down with "[M.E.'s] youngest son in it." M.E. testified that he believed Goodman would follow through with the threat and that he "was afraid for [his] children."

{¶ 7} On June 27, 2018, M.E. was in his living room when he heard a "loud crash." When M.E. realized that his front window had been shattered, he opened the curtains and saw Goodman standing on the sidewalk in front of his house. M.E. estimated that Goodman was standing less than 20 feet away from the broken window.

{¶ 8} At the close of the city's case, the defense moved for an acquittal pursuant to Crim.R. 29. The trial court denied the motion, and the defense proceeded with its case-in-chief.

{¶ 9} Goodman testified on his own behalf. He denied the allegations that he broke M.E.'s window and threated to burn down M.E.'s house. Goodman characterized M.E. as a "liar" and suggested that M.E. has mental health issues.

{¶ 10} At the conclusion of the trial, the court found Goodman guilty of aggravated menacing and criminal damaging. On December 20, 2018, the court sentenced Goodman to 180 days in jail on each count, to be served consecutively.

The court also imposed a restitution order in the amount of $3oo to repair the broken window.

**{¶ 11}** Following the imposition of Goodman's sentence, the following exchange occurred on the record:

GOODMAN:  Crazy.

THE BAILIFF:  (Inaudible).

GOODMAN:  Naw, man (inaudible) crazy.

THE BAILIFF:  (Inaudible).

DEFENSE COUNSEL:  (Inaudible).

GOODMAN:  If you did your job you would have –

THE COURT:  You better stop disrespecting her.

GOODMAN:  Naw.

THE COURT:  You are going to get a contempt charge on top of what you already doing.

GOODMAN:  She —

THE COURT:  Your mouth is what got you in jail for as long [as] you're doing.

GOODMAN:  (Inaudible).

THE COURT:  Be quiet.

GOODMAN:  (Inaudible).

THE COURT:  Be quiet.  Put him in the holding cell.

GOODMAN:  That's cool too —

THE COURT:  Have somebody put him in the holding cell.

GOODMAN:  (Inaudible) dumb.  Every time you say something (Inaudible).

THE BAILIFF:  12B to jail transport.

THE COURT:  You got a big mouth that's why.

GOODMAN:  I don't give a f*** about no big mouth, man.

THE COURT:  I don't either.  [30] more days.  [30] days.  Do a contempt charge.

GOODMAN:  I don't give a f*** about no [30] days.

THE COURT:  [60] more.

* * *

THE COURT:  Yeah, you can fill out a probable cause — profane language, inappropriate language in court, refused to stop.  It will be two counts.  He will get [60] more days.

{¶ 12} Based on the foregoing exchange, Goodman was charged in Cleveland Municipal Case No. CRB 18 022363 with two counts of contempt in violation of R.C. 2705.02(A), misdemeanors of the fourth degree.  He was subsequently found guilty and was sentenced to 30 days in jail on each count.

{¶ 13}  Goodman now appeals from his convictions and sentence.

## II.  Law and Analysis

### A.  Judicial Bias

{¶ 14}  In his first assignment of error, Goodman argues the trial court exhibited bias towards him throughout the criminal proceedings.  Goodman contends that the trial court's animosity "continued to grow and fester throughout

the pendency of the case, producing an unfair trial" and a sentence "that was based on the court's dislike instead of on the facts and law that should have been considered."

{¶ 15} R.C. 2701.03 provides the exclusive means for a litigant claiming a common pleas court judge is biased or prejudiced. *See State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph three of the syllabus. Under the statute, a litigant who believes a trial judge should be disqualified must file an affidavit of bias or prejudice with the clerk of the Supreme Court of Ohio. Only the Chief Justice or his or her designee may hear a disqualification matter. Thus, "[a] court of appeals has 'no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and no authority to void a trial court's judgment based on a claim that the trial judge is biased or prejudiced.'" *State v. Frazier*, 2017-Ohio-8307, 98 N.E.3d 1291, ¶ 16 (8th Dist.), quoting *State v. Williamson*, 8th Dist. Cuyahoga No. 104294, 2016-Ohio-7053, ¶ 27.

{¶ 16} However, it is axiomatic that the Due Process Clause requires a fair trial in a fair tribunal before an impartial judge with no actual bias against the defendant or interest in the outcome of his particular case. *Bracy v. Gramley*, 520 U.S. 899, 905, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34. Thus, the Ohio Supreme Court has recognized that proceedings before a biased judge are fundamentally unfair and denies a defendant due process of law. *State v. Dean*, 127 Ohio St.3d 140, 2010-

Ohio-5070, 937 N.E.2d 97, ¶ 48. Accordingly, a trial court's judgment may be reversed due to bias if the bias or prejudice violated the defendant's right to due process and deprived the defendant of a fair proceeding. *Id.*

**{¶ 17}** The Ohio Supreme Court has defined "judicial bias" as "'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *Dean* at ¶ 48, quoting *Pratt,* 164 Ohio St. 463, 132 N.E.2d 191, at paragraph four of the syllabus. "If the trial judge forms an opinion based on facts introduced or events occurring during the course of the current or prior proceedings, this does not rise to the level of judicial bias, '"unless [the opinions] display a deep-seated favoritism or antagonism that would make fair judgment impossible."'" *State v. Hough*, 2013-Ohio-1543, 990 N.E.2d 653, ¶ 11 (8th Dist.), quoting *id.* at ¶ 49, quoting *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

**{¶ 18}** In determining whether purported judicial bias resulted in a due process violation, we presume that a judge is unbiased and unprejudiced in the matters over which he or she presides, and "'the appearance of bias or prejudice must be compelling in order to overcome the presumption.'" *State v. Eaddie*, 8th Dist. Cuyahoga No. 106019, 2018-Ohio-961, ¶ 18, quoting *State v. Filous*, 8th Dist. Cuyahoga No. 104287, 2016-Ohio-8312, ¶ 14.

{¶ 19} Goodman supports his judicial bias claim with citations to relevant portions of the transcript. He contends that the trial court's hostility was manifested in (1) the court's admonishment for Goodman's failure to appear at scheduled pretrial hearings, (2) the court's instruction to Goodman during his cross-examination to answer questions and to not interrupt the court, (3) the court's statement when rendering its verdict that Goodman has apparent behavioral and anger issues, (4) the court's issuance of restitution absent supporting evidence, and (5) the court's characterization of Goodman's criminal record as "lengthy" in order to justify the imposition of consecutive sentences. Goodman asserts that the court repeatedly "berated" him and referred to his attitude as being "ridiculous."

{¶ 20} On this record, we find no evidence to overcome the presumption that the trial court was not biased or prejudiced against Goodman. During the pretrial proceedings, the trial court justifiably reminded Goodman that it was not appropriate for him to refuse to appear for scheduled hearings merely because he was under the mistaken belief that his felony case took precedence. Similarly, the trial court's instruction to Goodman to answer the questions posed during his cross-examination was consistent with the court's role as the gatekeeper. Additionally, the court's reference to Goodman's anger issues was supported by the testimony presented during the trial. Finally, we are unable to conclude that the trial court exhibited prejudicial bias by ordering restitution and characterizing Goodman's criminal history as "lengthy." Absent additional indicia of bias, the

trial court's exercise of discretion does not equate to "deep-seated antagonism" merely because the judgments were unfavorable to Goodman's interests.

{¶ 21} Based on the foregoing, we find no merit to Goodman's claim of judicial bias. The trial court's admonishments of Goodman did not impede Goodman's due process rights, because they were justified and were made in direct response to Goodman's own actions, statements, or outbursts.

{¶ 22} Goodman's first assignment of error is overruled.

## B. Restitution

{¶ 23} In his second assignment of error, Goodman argues the trial court erred by improperly ordering restitution in the amount of $300 without supporting evidence, and without conducting a proper hearing.

{¶ 24} R.C. 2929.28(A)(1) provides for financial sanctions for misdemeanor offenses. It states, in pertinent part:

> If the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, *the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution.* If the court holds an evidentiary hearing, at the hearing the victim or survivor has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender.

(Emphasis added.)

**{¶ 25}** The city concedes this assigned error. Defense counsel repeatedly objected to the order of restitution for the damaged property absent supporting estimates or receipts. Pursuant to the plain language of the statute, the trial court was required to hold an evidentiary hearing on restitution. Furthermore, although the evidence presented at trial supports the determination that the victim's front window was damaged, the record is devoid of any evidence regarding the value of the economic loss suffered.

**{¶ 26}** Goodman's second assignment of error is sustained. The trial court's order of restitution is vacated, and the matter is remanded to the trial court for an evidentiary hearing pursuant to R.C. 2929.28(A)(1). *See State v. Norman*, 8th Dist. Cuyahoga No. 104936, 2017-Ohio-752, ¶ 18 (remanding for an evidentiary hearing).

### C. Contempt of Court

**{¶ 27}** In his fourth assignment of error, Goodman argues he was denied due process of law when the trial court convicted him of contempt on the basis of insufficient evidence.

**{¶ 28}** Contempt is "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.

**{¶ 29}** A court has inherent and statutory authority over contempt proceedings. *Cleveland v. Bank of N.Y. Mellon*, 8th Dist. Cuyahoga No. 99559,

2013-Ohio-3157, ¶ 18. The statutory contempt powers are set forth in R.C. 2705.01 and 2705.02, which govern direct contempt and indirect contempt, respectively. Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. In contrast, indirect contempt involves acts occurring outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders. R.C. 2705.02; *In re Lance*, 8th Dist. Cuyahoga No. 102838, 2016-Ohio-2717, ¶ 12.

{¶ 30} Contempt is further classified as either civil or criminal. *Oak Hill Banks v. Ison,* 4th Dist. Jackson No. 03CA5, 2003-Ohio-5547, ¶ 14. "This distinction depends largely upon the character and purpose of the punishment imposed." *Id.* "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order[;] [c]riminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001). "Any sanction imposed for civil contempt must afford a contemnor the right to purge himself of the contempt." *Camp-Out, Inc. v. Adkins*, 6th Dist. Wood No. WD-06-057, 2007-Ohio-3946, ¶ 21. The punishment for criminal contempt, by contrast, "is 'punishment for the completed act of disobedience' and usually consists of fines and/or an unconditional period of incarceration." *Id.* at ¶ 20, quoting *In re Purola*, 73 Ohio App.3d 306, 311, 596 N.E.2d 1140 (3d Dist.1991). In order to be punished for criminal contempt, the

contemnor must be proven guilty beyond a reasonable doubt. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 251, 416 N.E.2d 610 (1980).

{¶ 31} Decisions in contempt proceedings rest within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *N. Royalton v. Awadallah (In re Leary)*, 8th Dist. Cuyahoga No. 96424, 2011-Ohio-6626, ¶ 18. An abuse of discretion connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 32} In this case, the record reflects that Goodman was charged and convicted on two counts of indirect contempt in violation of R.C. 2705.02(A). The statute provides, in relevant part:

> A person guilty of any of the following acts may be punished as for a contempt:
>
> (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]

Because Goodman was formally charged with contempt in violation of R.C. 2705.02(A), our review is governed by the procedural safeguards afforded to indirect contempt proceedings.

{¶ 33} "In every case involving indirect contempt, the alleged contemnor is entitled to formal notice and a hearing *before* the adjudication and punishment." (Emphasis added.) *In re Chambers*, 1st Dist. Hamilton Nos. C-180333 and C-180334, 2019-Ohio-3596, ¶ 27. This due-process guarantee is memorialized in R.C. 2705.03, which provides that "a charge in writing shall be filed with the clerk

of the court, and entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel." In *State ex rel. Seventh Urban, Inc. v. McFaul*, 5 Ohio St.3d 120, 449 N.E.2d 445 (1983), the Supreme Court of Ohio observed that "the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to." (Citation omitted.) *Id.* at 122.

{¶ 34} Having reviewed the record, it appears the trial court found Goodman in contempt of court for disobeying the trial court's request to (1) "be quiet," and (2) "stop disrespecting [defense counsel]." Upon Goodman's failure to comply with these demands, the trial court immediately found him in contempt of court. When Goodman continued to use "profane language," the court found him in contempt of court a second time and imposed two separate 30-day jail terms. Under these circumstances, the trial court's finding of indirect contempt under R.C. 2705.02 was criminal in nature. However, the acts supporting the indirect contempt convictions in this case did not occur outside the presence of the court. In addition, we find the procedural safeguards afforded to those punished for indirect contempt of court were not complied with in this case. Here, Goodman was not afforded formal notice, a hearing, or the opportunity to be heard before the adjudication and punishment.

{¶ 35} Our resolution of this assigned error does not condone Goodman's disrespectful and unacceptable conduct. Nevertheless, given the procedural

requirements of R.C. 2705.03, we find the trial court abused its discretion in summarily finding Goodman in indirect contempt of court in violation of R.C. 2705.02(A)(1). Goodman's fourth assignment of error is sustained.

{¶ 36} Goodman's contempt convictions and sentences are vacated. As such, Goodman's fifth assignment of error is rendered moot.

### D. Misdemeanor Sentencing

{¶ 37} In his third assignment of error, Goodman argues the trial court erred by considering uncharged, unproven criminal conduct when imposing his sentence. In his sixth assignment of error, Goodman argues the trial court erred when it failed to provide him the opportunity for allocution at sentencing pursuant to Crim.R. 32(A)(1). Goodman further contends that the court erred by imposing multiple consecutive jail terms. We consider these assignments of error together for clarity.

{¶ 38} When imposing a misdemeanor sentence, courts are afforded broad discretion. *State v. Hughley*, 8th Dist. Cuyahoga Nos. 92588 and 93070, 2009-Ohio-5824, ¶ 7, citing *Cleveland v. Jurco*, 8th Dist. Cuyahoga No. 88702, 2007-Ohio-4305, ¶ 18. The guidelines for misdemeanor sentencing are substantially similar to those applied in felony sentencing. The court must be guided by the purposes of misdemeanor sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender." *See* R.C. 2929.21(A). "To achieve those purposes, the sentencing court shall consider the impact of the offense upon the victim, [if any,] and the need for changing the offender's

behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." *Id.*

**{¶ 39}** In this case, Goodman was convicted of a first-degree misdemeanor, which pursuant to R.C. 2929.24(A)(1) carries up to 180 days in jail and a maximum fine of $250. In addition, Goodman was convicted of a second-degree misdemeanor, which pursuant to R.C. 2929.24(A)(2) carries up to 90 days in jail and a maximum fine of $250. Upon consideration of the factors set forth under R.C. 2929.21 and 2929.22, Goodman was sentenced to the maximum jail term on each count.[1]

**{¶ 40}** Having vacated the aggregate 60-day jail term imposed on the contempt offenses, our review of the record reflects that Goodman completed his remaining 270-day jail term during the pendency of this appeal. "'[O]nce a person has served the sentence imposed, in the absence of a challenge to the underlying conviction, there is neither a collateral disability nor a loss of civil rights that can be remedied by a modification of the length of that sentence.'" *State v. Holly*, 8th Dist. Cuyahoga No. 102764, 2015-Ohio-4771, ¶ 11, quoting *State v. Wright*, 8th Dist. Cuyahoga No. 83781, 2004-Ohio-4077, ¶ 19, citing *State v. Beamon*, 11th Dist. Lake No. 2000-L-160, 2001-Ohio-8712. We have addressed Goodman's convictions and have afforded relief when appropriate. *See Cleveland Hts. v.*

---

[1] We note that it was an error for the trial court to sentence Goodman to 180 days on the second-degree misdemeanor offense and then correct its error by imposing a 90-day jail term in the sentencing journal entry. *See State v. Vaughn*, 8th Dist. Cuyahoga No. 103330, 2016-Ohio-3320, ¶ 18 ("A trial court cannot impose a sentence in the sentencing entry that differs from that it imposed at the sentencing hearing."). Nevertheless, this error is moot.

*Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 24 (noting that an appellate court may provide redress a claim for a wrongful misdemeanor conviction, notwithstanding the completion of the sentence). However, Goodman has not presented a sufficient basis to overturn his underlying convictions for aggravated menacing and criminal damaging. Because Goodman already served his consecutive jail terms for each offense, no remedy can be provided regarding the length of his sentence or the court's compliance with Crim.R. 32(A)(1). His challenge is moot.[2] *See, e.g., State v. Pompei*, 8th Dist. Cuyahoga No. 79541, 2001 Ohio App. LEXIS 5052 (Oct. 25, 2001) (appeal challenging a sentence already served is moot); *State v. Massie*, 2d Dist. Clark Nos. 2018-CA-3 and 2018-CA-5, 2019-Ohio-2464, ¶ 23 (finding the court could not afford the defendant relief from the court's failure to comply with Crim.R. 32(A)(1) since his sentence has already been completed).

**{¶ 41}** Accordingly, Goodman's third and sixth assignments of error are overruled as moot.

---

[2] In *State v. Christian*, Slip Opinion No. 2020-Ohio-828, the Ohio Supreme Court considered "whether a trial court may resentence a defendant on a specific count after the sentence related to that count has been vacated on direct appeal and the defendant has been confined for the length of the original prison term that had been attached to that count." *Id.* at ¶ 1. The court held "that because a defendant in these circumstances has no expectation of finality in the original sentence once it has been vacated on direct appeal, the trial court has the ability to resentence the defendant de novo." *Id.* Relevant to this appeal, *Christian* does not contain any express language to suggest that the court overruled its prior decisions in *Lewis*, 129 Ohio St.3d 389, *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), or *State v. Berndt*, 29 Ohio St.3d 3, 504 N.E.2d 712 (1987), regarding the issue of mootness in misdemeanor cases.

**{¶ 42}** Judgment affirmed in part and reversed in part. Goodman's contempt convictions and sentences are vacated. In addition, the trial court's restitution order is vacated and the matter is remanded for a hearing pursuant to R.C. 2929.28(A)(1).

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR