# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DEMETRIUS HILL, | : | APPEAL NO. C-240671 |
| | | TRIAL NO. A-2302474 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| CHRISTOPHER HIKEL, | : | *JUDGMENT ENTRY* |
| LIBERTY HILL RENTALS CORP B, LLC, | : | |
| | : | |
| LIBERTY HILL MANAGEMENT, LLC, | : | |
| 34 E 14TH STREET, LLC, | : | |
| 424 LH, LLC, | : | |
| and | : | |
| | : | |
| BURNETT HOLDINGS, LLC, | : | |
| Defendants-Appellees. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/20/2025 per order of the court.**


**By:**_____
        **Administrative Judge**

[Cite as *Hill v. Hikel*, 2025-Ohio-2161.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| DEMETRIUS HILL, | : | APPEAL NO. | C-240671 |
|  |  | TRIAL NO. | A-2302474 |
| Plaintiff-Appellant, | : |  |  |
| vs. | : |  |  |
|  |  | *O P I N I O N* |  |
| CHRISTOPHER HIKEL, | : |  |  |
| LIBERTY HILL RENTALS CORP B, LLC, | : |  |  |
|  | : |  |  |
| LIBERTY HILL MANAGEMENT, LLC, | : |  |  |
| 34 E 14TH STREET, LLC, | : |  |  |
| 424 LH, LLC, | : |  |  |
| and | : |  |  |
| BURNETT HOLDINGS, LLC, | : |  |  |
| Defendants-Appellees. | : |  |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 20, 2025

*Demetrius Hill*, pro se,

*Rendigs, Fry, Kiely, & Dennis* and *James J. Englert*, for Defendants-Appellees.

**NESTOR, Judge.**

**{¶1}** This dispute arose from accusations by defendant-appellee Christopher Hikel that plaintiff-appellant Demetrius Hill broke into his apartment and stole his watch while Hill performed construction work on two lower units in the apartment building. The Hamilton County Grand Jury did not indict Hill, and he filed this civil suit against Hikel and his various limited liability companies (collectively "Defendants"), alleging false arrest, malicious prosecution, and intentional infliction of emotional distress ("IIED"), among other things. The trial court ultimately dismissed the malicious prosecution and false arrest claims and granted summary judgment to Defendants on the sole remaining claim of IIED. Hill now appeals to this court, asserting five assignments of error related to the trial court judge and the trial court's various judgments. After reviewing the record and relevant caselaw, we overrule all five of Hill's assignments of error and affirm the judgment of the trial court.

## I.    *Factual and Procedural History*

**{¶2}** Because the trial court disposed of this case at the summary judgment stage, many of the facts remain unresolved and the parties disagree about how the series of events unfolded. We detail the alleged facts below only to provide a sufficient backdrop for this appeal, but our decision rests solely upon legal grounds.

**{¶3}** In early 2022, Hikel asserts that he contracted S.G. to do some renovation work in two first-floor bathrooms within an apartment building. Hikel "technically resided" in one of the upstairs units, but did not live there full-time and only returned every couple of weeks. S.G. asked Hill to help with the project as a subcontractor. Because there were so many contractors going in and out of the building at the same time, Hill alleges that he and S.G. decided they would return at a

later date to avoid the chaos.

**{¶4}** Hikel alleged that between approximately April 21 and May 17, he returned to his personal unit three times, only to find dirt, footprints, and hair that was not his, scattered around the apartment. In his affidavit, Hikel was adamant that he did not give any of the contractors the code to enter his unit. Each time he allegedly found his apartment in this condition, he stated that he asked the cleaner to come and do a deep cleaning of the apartment. After the second deep clean, he alleges that he inspected the apartment to ensure its cleanliness.

**{¶5}** Hikel alleged that he returned to his personal unit in mid-May only to find it in the same dirty condition. At this point, he asserted that he was worried someone was entering the unit without his permission. After looking through the apartment, Hikel alleged in his affidavit that he discovered a bookbag in the master bedroom closet, and inside that bookbag was a journal with Hill's name on it. Hill disputes that he ever entered Hikel's personal unit and asserts that he left the bookbag on the first floor of the apartment building. After briefly texting with the cleaner and S.G. about their knowledge of the alleged acts, Hikel called the police to report the alleged break-in. Around that time, Hikel stated that he inventoried his belongings and believed that an expensive watch was missing, which he also reported to police.

**{¶6}** Officers arrested Hill on June 7, 2022. Ultimately, the Hamilton County Grand Jury did not indict Hill, and he was released from custody about four days after his arrest. The events leading up to Hill's arrest form the foundation of the dispute before us now.

**{¶7}** On June 9, 2023, Hill filed this case against Defendants, alleging IIED, several 42 U.S.C. claims (including a Fourth Amendment personal property claim, false arrest claim, malicious prosecution claim, and a civil rights violation), and a state

false arrest claim. Defendants initially filed a motion to dismiss, which the trial court partially granted. It dismissed the state false arrest claim and all 42 U.S.C. claims, leaving only the IIED claim to be litigated. During discovery, Defendants took Hill's deposition while he was incarcerated for an unrelated matter. Hill filed several of his own motions for reconsideration on the dismissed issues and a motion to strike his deposition, both of which the trial court denied. After discovery concluded, Defendants moved for summary judgment on the remaining IIED claim, which the trial court granted.

{¶8} Hill now appeals to this court, asserting five assignments of error. He first argues that the trial court judge exhibited bias towards him by referencing previous criminal dealings Hill had with the court. He also alleges that the trial court erred in dismissing the malicious prosecution and false arrest claims, denying his motions for reconsideration and to strike his deposition, and granting Defendants' motion for summary judgment.

{¶9} Again, the parties heavily dispute how the events detailed above unfolded (and if they ever happened at all). But ultimately, we need not resolve the facts alleged in this case because the trial court correctly disposed of Hill's claims on legal grounds.

## II. Analysis

### A. First Assignment of Error

{¶10} In his first assignment of error, Hill asserts that the trial court judge exhibited bias when it made comments during a hearing for this case about Hill's unrelated prior criminal matters.

{¶11} While these comments may be concerning, Hill never filed an affidavit for disqualification of the judge before the Supreme Court of Ohio. Therefore, insofar

6

as Hill argues that the trial court judge should have recused, we are unable to provide him any relief. "The Ohio Constitution vests the sole authority for determining the disqualification of a judge of a court of common pleas in the Chief Justice of the Supreme Court of Ohio." *Grace v. Perkins Restaurant*, 2025-Ohio-213, ¶ 34 (7th Dist.), citing Ohio Const., art. IV, § 5(C). To properly raise the disqualification of a judge, "the party must file an affidavit of disqualification with the clerk of the Supreme Court of Ohio pursuant to R.C. 2701.03." *Id.* We are "without authority to consider an error regarding the recusal or disqualification of a judge of the court of common pleas." *Id.*, citing *State v. Ramos*, 88 Ohio App.3d 394, 398 (9th Dist. 1993), citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978).

**{¶12}** However, we may consider Hill's claim as part of a due process argument. "We do have jurisdiction to review a claim of judicial bias that is alleged to result in a violation of a defendant's due process rights." *State v. Loudermilk*, 2017-Ohio-7378, ¶ 19-20 (1st Dist.). To the extent we can consider the merits of Hill's argument, we still do not believe the trial court exhibited judicial bias. "The demonstration of judicial bias is a high bar [and] 'we presume that [judges are] unbiased and unprejudiced in the matters over which [they] preside[] . . . .'" *State v. Terry*, 2025-Ohio-1195, ¶ 25 (1st Dist.), quoting *State v. Escobar*, 2021-Ohio-4001, ¶ 37 (1st Dist.), quoting *Cleveland v. Goodman*, 2020-Ohio-2713, ¶ 18 (8th Dist.). "'[T]he appearance of bias or prejudice must be compelling in order to overcome the presumption.'" *Id.*, quoting *Escobar* at ¶ 37, quoting *Goodman* at ¶ 18. Even if statements "'by the trial court "[] are critical or disapproving [], or even hostile to [] the parties . . . [the statements] ordinarily do not support a bias or partiality challenge."'" *Id.*, quoting *Escobar* at ¶ 38, quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994). Such comments may suffice to demonstrate judicial bias only when

they "'reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Id.*, quoting *Escobar* at ¶ 38, citing *Liteky* at 555.

**{¶13}** While the trial court's statements pertaining to its dealings with Hill in unrelated criminal matters were uncalled for, they do not overcome the high bar of showing judicial bias. Throughout the lengthy litigation below, the trial court gave Hill every chance to present his position. It considered his arguments each time. At the start of litigation, the trial court asked Hill if he had a problem with the court presiding over the case due to the prior dealings. Hill said no. At oral argument, Hill admitted that he did not believe that the trial court judge exhibited bias until much later in the case. That is not sufficient to overcome the high bar to demonstrate judicial bias.

**{¶14}** Therefore, we overrule Hill's first assignment of error.

### B. Second Assignment of Error

**{¶15}** In his second assignment of error, Hill argues that the trial court improperly granted Defendants' motion to dismiss his false arrest and malicious prosecution claims. We disagree.

**{¶16}** We review the trial court's grant of a Civ.R. 12(B)(6) motion to dismiss under a de novo standard of review. *Menorah Park Ctr. for Senior Living v. Rolston*, 2020-Ohio-6658, ¶ 12, citing *Lunsford v. Sterilite of Ohio, LLC*, 2020-Ohio-4193, ¶ 22. "'In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we accept as true all factual allegations in the complaint.'" *Id.*, quoting *Lunsford* at ¶ 22, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). "'A complaint should not be dismissed unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."'" *Id.*,

quoting *Lunsford* at ¶ 22, quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

**{¶17}** In its entry partially granting Defendants' motion to dismiss, the trial court explained that Hill filed the false arrest claim beyond the one-year statute of limitations, and it held that he failed to plead any facts that Defendants acted under "color of state law" to prove his malicious prosecution claims.

**{¶18}** A false arrest claim has a one-year statute of limitations that begins to run on the date of the arrest. *See Daly v. Certo*, 2025-Ohio-293, ¶ 54 (2d Dist.), quoting *Aaron v. Venator Group*, 2002 Ohio App. LEXIS 464, *2 (6th Dist. Feb. 8, 2022), citing *Mayes v. Columbus*, 105 Ohio App.3d 728, 746 (10th Dist. 1995) ("'A cause of action for false arrest accrues on the date of the complainant's arrest.'"). Hill was arrested on June 7, 2022, and he filed suit on June 9, 2023. His filing fell outside the one-year statute of limitations. Thus, the trial court did not err in dismissing Hill's false arrest claim.

**{¶19}** Hill filed a malicious prosecution claim under 42 U.S.C. 1983. "To maintain a Section 1983 cause of action, 'two elements are required: (1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Henderson v. Dewine*, 2022-Ohio-1025, ¶ 11 (1st Dist.), quoting *Crosset v. Marquette*, 2007-Ohio-550, ¶ 14 (1st Dist.), quoting *1946 St. Clair Corp. v. Cleveland*, 49 Ohio St.3d 33, 34 (1990).

**{¶20}** Hill asserts that the trial court dismissed his malicious prosecution claims for failure to file them within the statute of limitations. But as stated previously, the trial court dismissed Hill's malicious prosecution claims because he did not plead any facts that Defendants acted under "color of state law." "A person is acting under

the color of state law if 'the conduct allegedly causing the deprivation of a federal right can be fairly attributed to the State.'" (Cleaned up.) *Ford Motor Credit Co. v. Ryan*, 2010-Ohio-4601, ¶ 48 (10th Dist.), quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). The person who acted wrongfully "'must be a person who may fairly be said to be a state actor.'" *Id.*, quoting *Lugar* at 937. To be a state actor, the individual "'may be . . . a state official, [one who] acted together with or has obtained significant aid from state officials, or [one whose] conduct is otherwise chargeable to the State.'" *Id.*, quoting *Lugar* at 937.

**{¶21}** Defendants are an individual property owner and various limited liability companies related to the development property. Hill made no assertions that any of them acted under color of state law. He never alleged that they were state actors by way of their status as state officials, or that they acted in concert with or with the aid of state officials. Even if we take Hill's allegations as true, nowhere in his complaint did he allege that Defendants acted under color of state law. Therefore, there is no set of facts entitling him to relief on his Section 1983 claim.

**{¶22}** Based on the reasoning above, we overrule Hill's second assignment of error.

### C. Third Assignment of Error

**{¶23}** In Hill's third assignment of error, he asserts that the trial court erred in denying his motion to strike his deposition that was taken while he was incarcerated because he did not receive proper notice of the deposition and he did not have adequate time to prepare and obtain an attorney if he wished to do so.

**{¶24}** We review a trial court's decision to grant or deny a motion to strike under an abuse of discretion standard. *Derrick v. Budget Car Mart, LLC*, 2023-Ohio-2756, ¶ 19 (9th Dist.), quoting *Wicks v. Lover's Lane Market*, 2022-Ohio-2652, ¶ 7

(9th Dist.). An abuse of discretion occurs when the trial court "exercise[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶25}** Under Civ.R. 30(A), "any party may take the testimony of any person, including a party, by deposition . . . ." "The attendance of a party deponent may be compelled by the use of notice of examination as provided by division (B) of this rule." Civ.R. 30(A). Civ.R. 30(B)(1) requires the party requesting to depose an individual to give "reasonable notice" in writing to each party.

**{¶26}** Initially, on April 24, 2024, Defendants sent a notice of their intention to take Hill's deposition to his listed residential address. However, they were unaware that at that time, he was incarcerated for an unrelated matter. Under Civ.R. 30(A), "[t]he deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes." Hill filed an opposition to Defendants' motion. Once Defendants discovered Hill's incarceration, they moved the trial court on May 17, 2024, to allow them to take Hill's deposition while he was incarcerated and requested the court to order his transportation to the courthouse for it.

**{¶27}** Defendants then sent a notice to Hill (at the Hamilton County Justice Center ("Justice Center")) on June 14, 2024, to inform him that they intended to depose him on June 25, 2024, and they included all the necessary information per the Civil Rule. Officers transported Hill to the courthouse, but the deposition never took place. Defendants then sent a second notice to Hill at the Justice Center on June 26, 2024, informing him of their intent to take his deposition on July 2, 2024. Hill claims that he never received these notices, and therefore, he did not have time to properly prepare for the deposition or retain an attorney if he wished.

**{¶28}** But the record tells a different story. Hill responded in opposition to

Defendants' motion to the trial court to allow them to take his deposition. He was also transported by officers to the first noticed deposition. Therefore, he had notice of Defendants' intent to take his deposition. Hill alleges that officers from the Justice Center informed the trial court that Hill never received the notices. However, when asked about Hill's allegations by the trial court, a Justice Center officer said that he delivers several pieces of legal mail to Hill each day, so he could not say exactly what Hill received or did not receive. Looking at all of this, there is no indication that Hill did not have notice of Defendants' intent to take his deposition. Thus, the trial court did not abuse its discretion when it denied his motion to strike his deposition.

**{¶29}** In a separate but related argument, Hill asserts that the trial court erred in denying his motion to strike because, as a result of not receiving the proper notice, he was unable to properly prepare for the deposition or retain counsel for it if he wished. But for the same failure to point to anywhere in the record supporting this assertion, we disagree with Hill on this point. Hill knew of Defendants' intent to take his deposition as early as June 4, 2024, when he responded in opposition to their motion to the trial court to take his deposition while incarcerated. That was almost an entire month before the deposition took place.

**{¶30}** Furthermore, Civ.R. 30(B)(2) states that "[i]f any party shows that when the party was served with notice the party was unable, through the exercise of diligence, to obtain counsel to represent the party at the taking of the deposition, the deposition may not be used against the party." There is no evidence that Hill ever sought or requested time to seek counsel, nor does he make any developed argument on the point that demonstrates that he is entitled to relief from this court. *See McGowan v. Stoyer*, 2002-Ohio-5410, ¶ 23 (10th Dist.) ("Appellant makes a convoluted and undeveloped argument that under Civ.R. 30(B)(2) and 37, the trial

12

court should not have decided appellee's motion . . . . However, we see no application of those rules . . . to the present case . . . [as] there is no evidence or argument that appellant ever actively sought to obtain counsel at any time during the relevant period.").

{¶31} All other arguments that Hill makes pertaining to this assignment are essentially a reiteration of his argument that he did not receive proper notice. Therefore, they are resolved in the above discussion. Without pointing to any error evidenced in the record, we cannot say that the trial court abused its discretion. Therefore, we overrule Hill's third assignment of error.

### D. Fourth Assignment of Error

{¶32} In his fourth assignment of error, Hill argues that the trial court erred when it decided Defendants' motion for summary judgment prior to resolving his motion to reconsider the dismissed false arrest and malicious prosecution claims.

{¶33} Hill's characterization of the record on this point is inaccurate. The trial court denied Hill's motion for reconsideration on October 29, 2024. It did not enter a judgment on Defendants' motion for summary judgment until October 31, 2024. Therefore, despite Hill's assertions, the trial court did dispose of his motion to reconsider prior to its decision on Defendants' motion for summary judgment.

{¶34} Accordingly, we overrule his fourth assignment of error.

### E. Fifth Assignment of Error

{¶35} In his fifth and final assignment of error, Hill asserts that the trial court erred in granting Defendants' motion for summary judgment on his IIED claim, which was the only remaining claim after Defendants' prior motion to dismiss. Hill only asserted this claim against defendant-appellee Hikel.

{¶36} We review a trial court's decision to grant a motion for summary

13

judgment de novo. *Ingram v. Progressive Motors, Inc.*, 2024-Ohio-4996, ¶ 13 (5th Dist.), citing *Doe v. Shaffer*, 2000-Ohio-186 (2000). Trial courts "should enter summary judgment only if it appears that no material fact is genuinely disputed, and, after construing the allegations most favorably towards the non-moving party, it determines that reasonable minds could draw only one conclusion from the disputed facts." *Id.* at ¶ 11, citing *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427 (1981). To be considered material, "[a] fact . . . [must] affect[] the outcome of the case under the applicable substantive law." *Id.*, citing *Guernsey Cty. Community Dev. Corp. v. Speedy*, 2023-Ohio-1796, ¶ 24 (5th Dist.), citing *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301 (6th Dist. 1999).

{¶37} In order to prove IIED, a plaintiff must show "'(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, *and* (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.'" (Emphasis added.) *Licitri v. Dibaggio*, 2024-Ohio-1154, ¶ 17 (9th Dist.), quoting *Thomas v. Thomas*, 2014-Ohio-1714, ¶ 9 (9th Dist.), quoting *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (1994). Here, Hikel filed his motion for summary judgment and highlighted specific statements from Hill's deposition in support of the motion. Additionally, he filed an affidavit in support of his motion, where he alleged that the unit was dirty (despite being cleaned several times), that he found Hill's bookbag in a closet in the unit, and that he reported the incident to police. Hikel also stated in his affidavit that he did not intend to injure Hill and that he only intended to report a suspected crime.

{¶38} After the moving party supports their motion, "'an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts

14

showing that there is a genuine issue for trial.'" *Ingram* at ¶ 12, quoting Civ.R. 56(E). "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in this action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at ¶ 10, quoting Civ.R. 56(E).

**{¶39}** Upon Hikel's motion, Hill filed an opposition and attached to it text messages between Hikel and S.G., and Hikel and the cleaner, in which Hikel discovered that Hill was a convicted felon and recounted his alleged discoveries in his unit. But Hill did not attach an affidavit or any other appropriate evidence under Civ.R. 56(E) that created a genuine dispute as to any material facts. He rested only upon his allegations and assertions as to Hikel's intent. Hill failed to set forth "'specific facts showing there is a genuine issue for trial.'" *See Ingram*, 2024-Ohio-4996, at ¶ 12 (5th Dist.).

**{¶40}** Even if we were to consider the text messages attached to Hill's opposition to the summary judgment motion, they were still insufficient to create genuine disputes of material fact. At best, the text messages (and what Hill claims they showed) were speculative. *See Adkins v. City of Middletown*, 2025-Ohio-317, ¶ 82 (12th Dist.), citing *Baldwin v. Church of God of Trenton*, 2024-Ohio-1726, ¶ 33 (12th Dist.) ("Speculation does not generate a question of material fact necessary to defeat summary judgment."). He put forth no assertions as to what the text messages demonstrated. Furthermore, the texts do not offer any insight as to what Hikel's intentions were. Thus, even if we did consider the texts, they did not create a genuine issue of material fact.

**{¶41}** Based on the above reasons, we overrule Hill's fifth and final assignment

15

of error.

### III.   *Conclusion*

**{¶42}** Based on the foregoing analysis, we overrule all five of Hill's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.